1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**

7                         EASTERN DISTRICT OF CALIFORNIA

8

9

10   PAIGE ELLIS KNIGHT,                    Case No. 1:14-cv-01276-SMS

11            Plaintiff,

12       v.                                 ORDER AFFIRMING AGENCY'S DENIAL
                                            OF BENEFITS AND ORDERING
13   CAROLYN W. COLVIN, Acting              JUDGMENT FOR COMMISSIONER
     Commissioner of Social Security,
14
15            Defendant.

16

17        Plaintiff Paige Ellis Knight seeks review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her applications for disability insurance benefits ("DI") under

19   Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42

20   U.S.C. § 301 *et seq.*) ("the Act").  The matter is before the Court on the parties' cross-briefs, which

21   were submitted without oral argument.  After a review of the record and applicable law, the Court

22   affirms the decision of the Administrative Law Judge ("ALJ").

23              I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

24       A.  *Procedural History*

25        Plaintiff applied for DI and SSI on August 30, 2011 and August 31, 2011, respectively.  AR

26   85-86.  She alleged disability beginning on March 31, 2011.  AR 185.  The Commissioner denied the

27

28   ───────────────
     [1] The relevant facts herein are taken from the Administrative Record ("AR").

claims on November 9, 2011, and upon reconsideration, on June 1, 2012.  AR 85, 87, 118.   Plaintiff then filed a timely request for a hearing.  AR 125.

Plaintiff appeared and testified before an ALJ, Raymond Souza, on January 18, 2013.  Also at the hearing were Plaintiff's counsel and an impartial vocational expert ("VE").  AR 35.  In a written decision dated February 15, 2013, the ALJ found Plaintiff was not disabled under the Act.  AR 29.  On June 10, 2014, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint.  AR1; Doc. 1.

B.  *Factual Background*

The Court will not recount all of the facts of this case in detail here, discussing only what is is raised on appeal and thus relevant for purposes of this order.

In a disability report completed on September 7, 2011, Plaintiff claimed various issues limited her ability to work.  They included: back injury, diabetes, arthritis, depression, high blood pressure, migraines, irritable bowel syndrome, stroke, possible bi-polar and numbness in the lower extremities.  Plaintiff stated she stopped working because of her conditions and "other reasons" and specifically because she was "having issues with uncontrolled diabetes and blood pressure too high as well as migraines and back issues of major pain to not being able to feel lower extremities."  AR 269.

1.  Medical Evidence

Medical records show Plaintiff received treatment at various places including the Swedish American Hospital ("SAH"), Crusader Community Health Clinic ("CCH"), Rockford Memorial Hospital ("RMH"), MDSI Physician Services, Stanislaus Health Services ("SHS"), and Doctors Medical Center ("DMC") in Modesto, CA.  Notable were two evaluations conducted by physicians at MDSI Physician Services.

### a. *Dr. Harjit Gogna*

On October 6, 2011, Dr. Gogna, a consultative examiner, completed a comprehensive internal medicine evaluation of Plaintiff and made the following diagnoses: (1) diabetes mellitus, (2) uncontrolled hypertension, (3) history of migraines, (4) history of low back pain, (5) left hip pain, and (6) numbness in the hands and feet caused by possible early neuropathy.  Dr. Gogna opined that Plaintiff should be limited to standing and walking for six hours, lifting/carrying fifty pounds occasionally and twenty-five pounds frequently, and limited climbing and balancing.  Her sitting capacity, however, had no limitations.  AR 504-505.  Dr. Gogna further opined that Plaintiff "may have some limitations with handling" due to numbness in her hands and pain in her wrists.  Her grip was somewhat weak, although the range of motion in her hands and wrists were good.  Lastly, Plaintiff should be limited in working at heights and around heavy materials due to her high blood pressure, uncontrolled diabetes mellitus, and decreased sensation in her legs.  AR 505.

### b. *Dr. Gerardine Gauch*

On October 29, 2011, Dr. Gerardine Gauch, another consultative examiner, conducted a comprehensive psychiatric evaluation of Plaintiff.  Dr. Gauch opined that Plaintiff possessed a "good" ability to:

1) managing her funds
2) understand and remember very short and simple instructions;
3) understand and remember detailed instructions;
4) maintain concentration and attention;
5) accept instructions from a supervisor and respond appropriately;
6) sustain an ordinary routine without special supervision; and
7) complete a normal workday and workweek without interruptions and at a constant pace.

And Plaintiff's

1) "ability to interact with coworkers is fair, influenced primarily by depressed mood;"
2) "ability to deal with the various changes in the work setting is fair;" and
3) "the likelihood of [Plaintiff] emotionally deteriorating in the work environment is fair, influenced primarily by depressed mood and bereavement."

AR 512.

3

2.  Adult Function Report

Plaintiff completed an Adult Function Report on September 24, 2011.  Therein, Plaintiff Described her typical day, which consisted of letting the dogs out, watching television, running errands, napping, taking medications, and housework when needed.  She also cared for her husband and pets.   She generally had no issues with personal care but needed assistance with getting in and out of the shower and reminders to take her medications.  Plaintiff could perform house work with assistance and needed breaks to sit down.  AR 295-297.

Plaintiff went out daily and, when possible, drove.  She went shopping usually once a month, sometimes once a week.  The illnesses caused Plaintiff to lose, misplace or forget her money.  She also showed little concentration on paying for things.  She enjoyed watching television, going to the movies, driving, crocheting, plastic canvas crafts, and coloring, but has engaged in them less due to the pain and arthritis.  Plaintiff socialized on the phone and via the internet with family and friends, and chatted outside with neighbors.  But the socializing has diminished due to pain and changes in the body.  Plaintiff also visited her parents, sometimes requiring someone to accompany her.  AR 298-299.

Plaintiff's injuries affected her lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair-climbing, memory, ability to complete tasks, concentration, and use of her hands.  She could walk no farther than a block and required about ten minutes of rest.  She could pay attention for no longer than five minutes, and her ability to handle changes in routine depended on the day and the stressor.  Plaintiff used a cane, brace, eyeglasses, and a mobility cart at the stores; but only the brace was prescribed by a physician.  AR 300-301.

3.  Third Party Function Report

Plaintiff's husband, William Knight, completed a Third Party Function Report on October 4, 2011.  As stated, he had known Plaintiff for twenty years and spent all his time with her.  Together they cooked and cared for their pets.  AR 303-305.

Plaintiff spent her days resting and doing light household chores.  She had no problems with personal care and did not need reminders to take her medication.  She did house and yard work, but with assistance and with the use of a chair or stool.  She went out daily, and could drive.  She had no problem handling money.  She enjoyed Facebook, television, and fishing with assistance, though did not engage in them often.  She also socialized with others on a weekly basis, and visited her mother daily with assistance.  She had trouble sleeping, however, due to her conditions.  AR 304-307.

Plaintiff's conditions affected her lifting, walking, stair climbing, squatting, sitting, bending, kneeling, memory, standing, completing tasks, getting along with others, reaching, and concentration.  Her back pain limited her physical activities and her depression limited her social activities.  Using a cane, Plaintiff could walk no farther than 200 feet and would need to rest for ten minutes.  She seemed to suffer from bipolar disorder and depression.  AR 308-309.

4.  Plaintiff's testimony before the ALJ

Plaintiff was born on August 2, 1971 and completed one year of college.  She was, at the time of the hearing, living with her husband.  She last worked as a call center representative in 2011.  AR 38-39.

Plaintiff appeared at the hearing with braces, which she wore for about four days a week, for approximately four hours a day.  The braces, which were prescribed by a physician in 2008, helped stabilize movement and reduce pain in Plaintiff's wrists stemming from her carpal tunnel syndrome.  Her current physician has no knowledge of the braces.  AR 40-41.

Plaintiff testified to having the following medical issues: back pain, diabetes, migraine headaches, bipolar disorder and irritable bowel syndrome.  AR 39.  Her diabetes caused dizziness and nausea about three times a day.  This resulted in her missing about thirty minutes of work, three times per day.  She experienced low back pain about four times a week.  The diabetes and low back pain meant she could be on her feet no longer than twenty minutes, sit no longer than thirty minutes, and lift a gallon of milk at most.  Her migraines occurred about three times per week and last as long

5

as five hours a day.  Further, her depression caused crying spells about one or twice a day, lasting ten

to twenty minutes each time.  She was open to seeing a psychiatrist for the depression but could not

find one who would accept her insurance.  Her treatment consisted, therefore, of only medication.

AR 44-49.

Plaintiff also suffered from neuropathy of the hands and feet.  Specifically, she could use her

hands for no longer than thirty minutes at a time and required the same amount of rest time.  This

affected her job performance, which required use of the hands for eight hours a day.  She had been

using a four-point cane for about four years.  Her feet would swell about four times per week, each

time lasting an hour or longer.  To reduce the swelling, she would elevate her feet to heart level.  AR

42-46.

5.  <u>Vocational expert testimony before the ALJ</u>

The VE, David Dettmer, testified about Plaintiff's past work.  The ALJ posed a number of

hypotheticals for the VE.  First, he directed the VE to consider a person of the same age, education,

and work experience as Plaintiff, who is:

> limited to handling of objects as gross manipulation to frequent
> bilaterally and fingering of objects, that fine manipulation of items no
> smaller than the side of a paper clip to frequent bilaterally. . . . limited
> to jobs that can be performed while using a handheld assistive device
> for uneven terrain or prolonged ambulation.  [Who] [m]ust avoid all
> uses of hazardous machinery . . . and all exposure to unprotected
> heights.  Work is also limited to simple, as defined in the <u>DOT</u> as
> SVP: 1 and 2, team or repetitive tasks.

AR 53.

The VE opined that such person could not perform Plaintiff's past work.  There were,

however, other jobs within the region or national economy for such an individual, namely as a

cashier in some places, an office helper or a parking lot attendant.  Next, the ALJ then directed the

VE to assume a person with the same limitations who could manage only occasional handling and

fingering, and asked if that would change the VE's answer.  The VE opined that the cashier and

parking lot attendant jobs for such person would reduce by half, and the office helper job would be eliminated.  According to the VE, there would not be significant work in the region or national economy for a person with such limitation of the hands at the sedentary level.  Finally, the ALJ asked the VE if such person would be precluded from work at all the exertional levels if she has two or more unexcused or unscheduled absences in a month as well as two or more unexcused or unscheduled breaks in a workday.  The VE stated, "it would," and that the same preclusion would exist if such person had to occasionally elevate her lower extremities to heart level while seated.  AR 53-55.

      6.  <u>ALJ's Decision</u>

A claimant is disabled under Titled II and XVI if she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[2]

The ALJ here employed the five-step sequential process and found Plaintiff was not disabled under the Act.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

---

[2]  The ALJ must determine: "(1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quotations, citations and footnote omitted); 20 C.F.R. §§ 404.1520; 416.920 (2011).  Residual functional capacity is "the most" a claimant "can still do despite [the claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a) (2011).  "The claimant carries the initial burden of proving a disability in steps one through four of the analysis.  However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

since the alleged onset date of March 31, 2011.  AR 21.  At step two, Plaintiff had the following severe impairments: diabetes mellitus, irritable bowel syndrome, migraine headaches, back disorder, obesity, hypertension, depression, and anxiety.  At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 22.  Based on all of the impairments, Plaintiff had the residual functional capacity (RFC) to perform a wide range of light work.  She was precluded, however, from work requiring her to climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl.  She was limited to frequent gross and fine bilateral manipulation and required a handheld assistance device for walking on uneven terrain or for prolonged movement.  She had to avoid all unshielded moving machinery and unprotected heights.  She was limited to work involving simple routine, repetitive, one or two step tasks.  AR 23.  At step four, Plaintiff was unable to perform any past relevant work.  And at step five, there were jobs existing in significant numbers in the national economy which Plaintiff could perform, such as cashier and parking lot attendant.  Consequently, the ALJ concluded Plaintiff was not disabled under Titles II and XVI of the Act.  AR 28-29.

## II.  DISCUSSION

A.  *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the

1  Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of

2  supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation

3  and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision

4  must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g)

5  (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error.

6  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

7       Nevertheless, an ALJ's error is harmless "when it was clear from the record that [the] error

8  was inconsequential to the ultimate nondisability determination."  *Robbins v. Soc. Sec. Admin.*, 466

9  F.3d 880, 885 (9th Cir. 2006).

10  B.  *Analysis*

11       Plaintiff alleges: (1) the ALJ erroneously rejected part of Dr. Gauch's opinion and neglected

12  to consider it in the RFC determination, (2), the ALJ did not provide clear and convincing reasons

13  for discrediting Plaintiff, and (3) the ALJ failed to give any reason for rejecting Mr. Knight's

14  statement; and (4) substantial evidence does not support the ALJ's RFC determination.  Opening Br.,

15  pgs. 8-16.

16       1.  <u>Dr. Gerardine Gauch's Opinion</u>

17       Plaintiff avers the ALJ improperly rejected Dr. Gauch's opinion concerning the functional

18  areas where Plaintiff rated "fair," without giving specific and legitimate reasons.  She asserts that

19  "fair" means the "ability to perform a particular activity is seriously limited but not precluded," and

20  such serious limitations would, under Social Security Rule 85-15,[3] limit Plaintiff's potential

21  occupational base.  Doc. 18, pg. 9-10.  In response, the Commissioner points to the fact that the ALJ

22  gave substantial weight to Dr. Gauch's opinion and found Plaintiff limited to simple repetitive tasks

---

[3]  Social Security Ruling 85-15 provides three required abilities in performing unskilled work: "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15.

1   limitations, even in light of Dr. Gauch's positive assessments.  Nonetheless, the Commissioner

2   contends the ALJ, as the final arbiter in resolving ambiguities in the evidence, properly considered

3   and evaluated Dr. Gauch's opinion.  Doc. 22, pp. 4-6.

4         First, Plaintiff's citation to an online abstract to support her definition of "fair" is

5   unpersuasive.  The abstract is not controlling authority and the Court is therefore not bound to follow

6   it.  While Dr. Gauch did not define what is meant by "fair" in her assessments, it is indeed the ALJ

7   who is tasked with interpreting the assessments and all other medical evidence.  *See Brown-Hunter*

8   *v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("For highly fact-intensive individualized

9   determinations like a claimant's entitlement to disability benefits, Congress places a premium upon

10  agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for

11  reviewing courts to substitute their discretion for that of the agency.") (quotations omitted).

12  Any confusion regarding their meaning is for the ALJ to resolve.  *See id.* ("we leave it to the ALJ to

13  determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record")

14  (quotations omitted).  Second, SSR 85-15 is inapplicable.  That ruling sets forth the framework for

15  evaluating *solely* nonexertional impairments.  *See* SRR 85-15 (Where a person's *only* impairment is

16  mental . . . the final consideration is whether the person can be expected to perform unskilled

17  work.") (emphasis added).  But, here, Plaintiff has both exertional[4] and nonexertional limitations.

18  *Sandgathe v. Chater*, 108 F.3d 978, 981 (9th Cir. 1997) ("[Plaintiff] asserts that his impairments

19  limit, among other things, his abilities to sit and lift, which are exertional limitations. SSR 85–15

20  therefore does not apply.") (citation omitted).

21        Plaintiff has not shown that the ALJ rejected Dr. Gauch's assessments.  *See Burch*, 400 F.3d

22  at 679 (stating the claimant in Social Security cases bears the burden of proving disability at steps

23  one through four).  As noted, the ALJ explicitly recounted Dr. Gauch's opinion, summarizing the

---

[4]  "Limitations are classified as exertional if they affect your ability to meet the strength demands of jobs."  20 C.F.R. § 416.969a.

functional areas where Plaintiff received a "good" or "fair" rating.  He then stated: "[t]he

undersigned gives substantial weight to the diagnoses as described by [Dr. Gauch], but finds that the

[Plaintiff] should be limited to work involving simple repetitive tasks, with an SVP[5] level of 1 or 2."

AR 27; *see* SSR 00-4p ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled

work corresponds to an SVP of 1-2 . . . .").  But notable is the ALJ's ultimate RFC determination.

That he found Plaintiff "is limited to work involving simple routine, repetitive, one or two step

tasks" reflects consideration of Dr. Gauch's "fair" assessments.  AR 23.  Contrary to Plaintiff's

assertion, the  ALJ did not reject part of Dr.Gauch's assessments.  He was not therefore required to

provide specific and legitimate reasons.

      Furthermore, Plaintiff has not shown how she is prejudiced where Dr. Gauch's "good"

assessments, also considered by the ALJ, indicated Plaintiff could sustain an ordinary routine

without special supervision, and complete a normal workday and workweek, without interruptions.

*See Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1056 (N.D. Cal. 2014) ("Plaintiff bears the burden of

demonstrating how the ALJ's error prejudiced her.") (citing *McLeod v. Astrue,* 640 F.3d 881, 886–

88 (9th Cir.2011).

      2.  <u>Plaintiff's Credibility</u>

      Plaintiff argues the ALJ gave vague, impermissible, and inadequate reasons for discrediting

her statements of pain and symptoms.  Doc. 18, pg. 10.  She takes issue with the ALJ's reasons:

(1) that Plaintiff's characterization of pain was not consistent with medical records, (2) Plaintiff was

able to participate in the hearing without any overt pain behavior, and (3) Plaintiff returned to work

after the alleged disability onset date.  The Commissioner asserts the ALJ provided valid reasons,

---

[5] "'SVP' refers to the 'specific vocational preparation' level which is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.' *Dictionary of Occupational Titles,* Appendix C, page 1009 (4th ed.1991)."  *Bray v. Comm'r of Soc. Sec. Admin.* 554 F.3d 1219, 1230 (9th Cir. 2009).

supported by the record, for discrediting Plaintiff.  Doc. 22, 7-10,

A claimant's statement of pain or other symptoms is not conclusive evidence of disability. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2011).  "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quotations omitted).  "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1014-15; *Robbins,* 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").  Factors an ALJ may consider include: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ must also give consideration to the factors enumerated in SSR 96-7p.[6]  "It's not sufficient for the ALJ to make only general findings; he

---

[6]  Social Security Ruling 96-7p states, in relevant part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the

must state which pain testimony is not credible and what evidence suggests the complaints are not credible.  He must either accept [claimant's] testimony or make specific findings rejecting it." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (citation and quotations omitted).

In this case, the ALJ explicitly found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  AR 25.  But he rejected Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms," finding her "not entirely credible[.]"  AR 25.  Because no evidence suggests Plaintiff was malingering, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's statements.

Explaining his reasons for discrediting Plaintiff, the ALJ stated:

> The claimant's characterization of pain is not consistent with medical records.  Her testimony was exaggerated.  Medical tests and studies do not support the severity, intensity, and frequency of her allegations.  The claimant was able to participate in hearing without any overt pain behavior.  Further, the record shows claimant returned to work after the alleged onset of disability date, from August 2, 2011 through August 10, 2011.

AR 25.

---

objective medical evidence when assessing the credibility of an individual's statements:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

a.  *Plaintiff's Statements Inconsistent with Medical Record*

Relying on *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090 (9th Cir. 2014), Plaintiff first contends the ALJ did not identify the medical "tests and studies," despite citing it as a reason for discrediting Plaintiff.  The Commissioner asserts that to the contrary, the ALJ discussed numerous medical records which show Plaintiff receiving only conservative care, namely medications.

In his written decision, the ALJ discussed various medical records of treatment Plaintiff received before the alleged disability onset date.  These included a January 2, 2010, report of Plaintiff's visit to the emergency department at RMH due to abdominal pain and cramping, with vaginal bleeding; a May 25, 2010, report from SAH showing diagnostic laparoscopy and hysteroscopy were performed; and a June 16, 2010, report from SAH showing Plaintiff was diagnosed with a wound infection after the laparoscopic procedure, diabetes, hypertension, dyslipidemia, migraine headache, and mild transaminitis.  AR 483, 345, 372.  Additionally, the ALJ discussed two progress reports from CCH addressing Plaintiff's visits: one on September 15, 2010, wherein she was assessed with hypertension, depressive disorder, chronic migraine, asthma, diabetes mellitus, acute upper respiratory infections and dysuria; and the other on September 21, 2010, wherein she was assessed with lumbago, hypertension, and thoracic or lumbosacral neuritis or radiculitis, though no x-rays or diagnostic tests were taken.  AR 381-385.  The ALJ also discussed a January 26, 2011, emergency department report from RMH which showed treatment for Plaintiff's complaint of sore throat, body aches, and chest tightness.  He explained that Plaintiff's electrocardiogram (EKG) results were normal, and that she was ultimately assessed with acute viral syndrome and uncontrolled hypertension.  AR 464-469.

The ALJ opined that the records showed treatments generally consisting of prescribed medications.  He reasoned that because they reflect treatment before the alleged disability onset date, they provide little support for Plaintiff's statements concerning the severity, intensity or frequency of

symptoms.   The ALJ also noted the dearth of diagnostic studies such as x-rays or magnetic

resonance imagings associated with these reports.  His discussion of the medical reports did not,

however, end there.

     The ALJ went on to discuss records of treatment Plaintiff received after the alleged disability

onset date.  These included progress notes from Health Services Agency ("HSC").  Notably, a

November 17, 2011, progress note showed Plaintiff was diagnosed with lumbar neuropathy.

Conservative management and medications were recommended.  AR 547.  A February 27, 2012,

progress note showed a visit due to eye pain, which culminated with a recommendation to continue

medication for a skin condition.  Other progress notes showed Plaintiff made additional visits in

February 2012.[7]  These progress notes[8] generally showed Plaintiff receiving recommendations of

continued medication, exercise and/or change in diet.  AR 539-541.

     Also, a November 13, 2012, emergency room report from DMC showed Plaintiff complained

of a severe headache, for which she received medication,[9] was discharged, and advised to continue

with her medications.[10]  The examining physician diagnosed her with "classical migraine" and

"diabetes in poor control.  AR 564-569.  Finally, the a report from the Ceres Medical Office showed

a list of Plaintiff's prescribed medications for general pain, insomnia, migraine headaches,

depression, diabetes, high blood pressure, cholesterol, and other conditions.  AR 604-608.

     According to the ALJ, the records confirmed the various medical problems Plaintiff reported,

but "other than medications, there is little indication throughout the entire treatment record of

objective findings to support any functional limitations."  He explained that the diagnoses and

---

[7]  The handwritten notes are largely illegible.
[8]  They do not, however, as the ALJ stated, reflect Plaintiff's complaint of a headache or general
pain, but do show specific complaints of, for example, depression, crying spells, and difficulty
sleeping. AR 539-544.
[9]  Contrary to the ALJ's assertion, the record does not show Plaintiff received an injection of
Dilaudid, only that it was administered along with Compazine.  AR 568.
[10]  Contrary to the ALJ's description, there is no record of a December 17, 2012 visit wherein
Plaintiff complained of another migraine.

1   recommended medications were based mainly on Plaintiff's subjective complaints; the diagnoses

2   appearing to stem from sympathetic assessments.  The ALJ concluded, therefore, that "[a]ny

3   suggestion of possible functional limitations that may be extrapolated after detailed review of the

4   medical record would be inconsistent with the treatment record as a whole."  AR 26.

5        Given this discussion of the medical records, for Plaintiff to assert that the ALJ did not

6   identify the medical "tests and studies," is specious.  Her contention appears to turn on semantics

7   more so than substance.  For example, the ALJ discussed Plaintiff's January 26, 2011 report from

8   RMH and noted the normal EKG.  That report included orders for an EKG and tests for influenza

9   troponin; the test results accompanied the report.  AR 462-463.  Similarly, pathology test results

10  accompanied the January 2, 2010 report from RMH, which the ALJ also discussed.  Thus, while the

11  ALJ did not explicitly name all the tests performed on Plaintiff, they are necessarily subsumed by

12  the records summarizing the care and treatments she received.  *See Magallanes*, 881 F.2d at 755

13  ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate

14  inferences from the ALJ's opinion.").

15       The ALJ's account of Plaintiff's treatment records, while inaccurate at times, demonstrates

16  clearly and convincingly why he found her incredible.  Pointing to the records before and after the

17  alleged disability onset date, the ALJ siphoned from them the fact that aside from confirming

18  Plaintiff's conditions, they do not support the intensity, severity, and limiting effects of her

19  symptoms, as she earlier testified— migraines (occurring three times per week), depression (crying

20  spells about twice a day and lasting about ten minutes each time), neuropathy of the hands (needing

21  rest for after twenty to thirty minutes of use), neuropathy of the feet (swelling of the feet causing

22  need to elevate), and low back pain (standing no longer than twenty minutes, sitting no longer than

23  thirty minutes).  Because the records generally reflected only a conservative mode of treatment,

24  namely medication, they cast doubt on Plaintiff's assertions of intensity and severity.  Consequently,

25  the ALJ did not err in failing to discuss the medical tests and studies.

16

b. *Plaintiff Worked After the Alleged Disability Onset Date*

Next, Plaintiff contends the ALJ erred in finding her not entirely credible based on the fact She returned to work for nine days in August 2011, and that she did not fully explain why she then stopped working.  The Commissioner avers to the extent that Plaintiff was not candid, the ALJ was entitled to consider that fact in his credibility determination.

Plaintiff is correct to explain that working after the alleged disability onset date does not, per se, indicate she is not disabled.  *See, e.g., Lingenfelter v. Astrue,* 504 F.3d 1028, 1038 (9th Cir.2007) ("[i]t does not follow from the fact that a claimant tried to work for a short period and, because of his impairments, *failed,* that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment" (emphases in original)); *Asberry v. Astrue*, 2013 WL 140218, at *3 (C.D. Cal. Jan. 9, 2013) (the fact that the plaintiff worked in 2008, after her alleged disability onset date in 2007, does qualify as a clear and convincing reason for not crediting her subjective pain and symptom testimony) (No. CV 12-2565 RNB); *Risner v. Astrue*, 2012 WL 204223, at *7 (C.D. Cal. Jan. 23, 2012) ("the fact that plaintiff repeatedly tried to work, but was increasingly unable to do so, could *support* her allegations of disabling pain in her head, arms, and back, and from her neck to the scapula or rhomboid area") (No. ED CV 11-495-PLA).[11]

The ALJ pointed to Plaintiff's September 7, 2011, disability report wherein she stated her reasons for not working after August 10, 2011: "Because of my condition(s) and other reasons."  AR 269.  Focusing on the words "other reasons," the ALJ concluded Plaintiff was "not being completely candid."  AR 25.  Understandably, when a claimant uses the words "other reasons" rather than provide a specific and detailed answer, the assessment is that she is less than candid.  But the ALJ did not mention that Plaintiff also explained in that report she was "having issues with uncontrolled diabetes and blood pressure too high as well as migraines and back issues of major pain to not being

---

[11]  This unpublished decision is citable under Rule 32.1 of the Federal Rules of Appellate Procedure. *See also* 9th Cir. R. 36-3(b).

17

able to feel lower extremities." AR 269.  By focusing on a few words instead of looking at Plaintiff's overall response as to why she stopped working, the ALJ improperly gave more weight to evidence which supported his conclusion over other equally relevant evidence.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("ALJ improperly cherry-picked some of Dr. Dees's characterizations of Ghanim's rapport and demeanor instead of considering these factors in the context of Dr. Dees's diagnoses and observations of impairment"); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ was not permitted to "cherry-pick" from those mixed results to support a denial of benefits.").  That Plaintiff worked for only nine days as a call center representative did not suggest she was without the medical issues which caused her to stop working altogether.  The ALJ's reason that Plaintiff was not entirely credible because she worked after the alleged disability onset date was therefore unconvincing.  But, as discussed, this was not the only reason the ALJ provided.

### c.  *Observations of Plaintiff at the Hearing*

Plaintiff's final contention regarding credibility concerns the ALJ's assessment that Plaintiff was able to participate in the hearing without any overt pain.  Plaintiff asserts the ALJ was not specific with his reasoning[12] and, moreover, observations of Plaintiff at the hearing cannot alone support a finding that she was not credible.  The Commissioner contends such observations are acceptable as a factor in the credibility analysis.

Contrary to Plaintiff's assertion, the Court does not find the ALJ's reason here lacking in specificity.  One can infer that the ALJ found Plaintiff's credibility questionable based on the fact that she displayed no symptoms of pain at the hearing.  Whether this reasoning is satisfactory, however, is a different question.  Social Security Ruling 96-7p provides, in relevant part: "In

---

[12]  Mindful of counsel's tendency to apply the kitchen-sink approach in handling Social Security cases, the Court urges counsel to adopt a more efficient and good-faith approach, without sacrificing the quality of representation and considering the court's limited resources.  This would, in turn, result in counsel submitting well-organized briefs grounded in clear and thoughtful analysis.

instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."  SSR 96-7p.  Otherwise stated, an ALJ is not prohibited from considering his observations in making the credibility determination.  He is, however, prohibited from discrediting a claimant based only on those observations.  *Id.* ("the adjudicator is not free to accept or reject the individual's complaints *solely* on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements") (emphasis added).  But as discussed above, the ALJ did not discredit Plaintiff solely on the fact that she participated in the hearing without any displaying any overt pain.  Any error here was therefore harmless.  *See Robbin*, 466 F.3d at 885.

In sum, the ALJ provided a clear and convincing reason for rejecting Plaintiff's statements.

3.  William Knight's Statements

Plaintiff contends the ALJ failed to provide germane reason for rejecting the testimony of Mr. Knight.   Plaintiff states that given her significant mental impairment, and the fact that Mr. Knight's "observations largely corroborated Dr. Gauch's opinion," failure to give legally adequate reasons for rejecting his opinion was error.  Doc. 18, pg. 14-15.  The Commissioner contends the ALJ gave multiple valid and germane reasons for rejecting the opinion.  Doc. 22, pg. 10.

"[C]ompetent lay witness testimony *cannot* be disregarded without comment[.]"  *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012) (quotations omitted).  Before discounting such testimony, "the ALJ must give reasons that are germane to each witness."  *Id.* (quotations omitted).  But the ALJ is not required to "discuss every witness's testimony on a[n] individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Id.*

As Plaintiff's husband and someone she had known for twenty years, Mr. Knight could and did provide competent testimony. *See* SSR 06-03p (while without power to "establish the existence of a medically determinable impairment," sources which are not acceptable medical sources (e.g., spouses) "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function"). The relevance of Mr. Knight's statements in providing additional information about Plaintiff's mental impairment warranted consideration by the ALJ. *See also* 20 C.F.R. pt. 404, subpt. P, app.1, 12.00(D)(1)(b) ("When you have a mental impairment . . . you may not be willing or able to fully or accurately describe the limitations . . . we carefully examine the statements you provide to determine if they are consistent with the information . . . .")

The ALJ discussed Mr. Knight's testimony, but stopped short of explaining whether he rejected the testimony. At most, the ALJ summarized Mr. Knight's statements from his Third Party Function Report, but made no comment giving weight to the statements. This was error. *See Molina,* 674 F.3d at 1114 (finding that while the ALJ's rationale included reference to third party statements which support the claimant, such reference does not satisfy the rule that witness testimony "*cannot* be disregarded without comment") (quotations omitted)). But in light of the Court's conclusion that the ALJ provided clear and convincing reasons for rejecting Plaintiff's own subjective statements of pain and symptoms, this error was harmless. *Contra id.* at 1122 ("failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims") (quotations omitted)).

4.  Plaintiff's Residual Functional Capacity[13]

Lastly, Plaintiff contends substantial evidence did not support the ALJ's RFC determination

---

[13]  Plaintiff's contention here is, in part, incomprehensible and scant of analysis. *See Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 872 (9th Cir. 2001) *aff'd sub nom. Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003) ("We therefore cannot grant relief [on this] argument, because he has failed to develop the record and his argument sufficiently to render it capable of assessment by this court."). She simply makes assertions sans thoughtful discussion.

where there were ambiguities, namely Dr. Gogna's assessment concerning "limitations with handling," which should have triggered the ALJ to develop the record further.  Additionally, Plaintiff asserts the ALJ did not account for her history of migraines and lumbar pain in his RFC determination.  Doc. 18, pp. 15-16.  The Commissioner asserts Plaintiff did not satisfy her burden of proving she was entitled to benefits under the SSA, given the paucity of evidence showing that she was unable to work.  Doc. 22, pp.10-11.

It is settled that Plaintiff bears the burden of proving her disability at steps one through four.  *See Burch*, 400 F.3d at 679; *see also* 42 U.S.C. § 423(d)(5) (2011) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.").  But the ALJ's duty to develop the record further is triggered, however, "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

With regard to Dr. Gogna's assessment, the Court disagrees with Plaintiff's interpretation.  In her report, Dr. Gogna stated that Plaintiff "may have some limitations with handling" due to "numbness in her hands and pain in the wrists[.]"  She further explained that Plaintiff "had a good range of motion in her hands and wrists," but her "grip was somewhat weak."  AR 505.  Dr. Gogna's assessment was thus unambiguous as she expressly qualified her assessment of Plaintiff's hand limitations.  As to Plaintiff's history of migraines, the ALJ was not silent.  He noted the condition in Plaintiff's, visit to DMC on November 13, 2012 for a migraine headache, and Dr. Gogna's diagnosis of a history of migraines.  But Plaintiff did not show how the migraines, and the lumbar and diabetes mellitus which she referenced, contributed to her functional limitation.  *See* 20 C.F.R. §§ 404.1512(c), 416.912(c) (2011) (explaining that a claimant must provide medical evidence showing that she has an impairment and how severe it is, and how the impairment(s) affect her functioning during the alleged period of disability); *see also id.* at §§ 404.1521(a), 416.921(a) (2011) ("An

impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  Plaintiff's contention here is therefore unavailing.

### III.  CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   **March 31, 2016**                   **/s/ Sandra M. Snyder**
                                             UNITED STATES MAGISTRATE JUDGE